# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RICHARD SWOPES,

      Plaintiff,

v.                                        No. CV 10-0125 BB/GBW

JOE WILLIAMS, et al.,

      Defendants.

## REPORT AND RECOMMENDATION
## ON DEFENDANT WILLIAMS' MOTION TO DISMISS

**THIS MATTER** is before the Court on Defendant Joe Williams' Rule 12(c) Motion to Dismiss Plaintiff's Claims as Moot filed on February 11, 2011.[1]  *Doc. 66.*  Plaintiff did not respond to the motion within the prescribed time, and on March 7, 2011, Mr. Williams filed a Notice of Briefing Complete.  *Doc. 70.*  On March 25, 2011, Plaintiff filed a response to Mr. Williams' motion.  *Doc. 76.*  Included in his response is a request that the Court accept his belated filing, noting that he missed the deadline because he inadvertently slipped Mr. Williams' motion into a file where he kept paperwork for a separate pending lawsuit.  *Id.* at 1.  The Court grants Mr. Swopes' requested extension and has considered the arguments presented in his response.  Because I find that Defendant Williams has presented no

---

[1] This case was referred to me for a recommended disposition on February 16, 2010.  *Doc. 5.*

1

arguments demonstrating that he is entitled to judgment as a matter of law, I recommend denying his 12(c) Motion to Dismiss.

Plaintiff's §1983 lawsuit arises out of a set of events that took place while he was incarcerated at the Lea County Correctional Facility (LCCF), a New Mexico Corrections Department (NMCD) prison in Hobbs, New Mexico.[2]  *Doc. 1* at 4; *see also doc. 66*.  Plaintiff claims that he was denied adequate dental care from June 2005 to "the beginning of 2008." *Doc. 1* at 4.  During that time period, Defendant Williams was employed as Secretary of New Mexico's Corrections Department (NMCD).  *Doc. 1* at 1.  Significantly, although Plaintiff seeks compensatory damages from other Defendants, he seeks only injunctive and declaratory relief from Defendant Williams.  *Doc. 1* at 21-22.  Plaintiff believes that the negligent care he received stems from an inherent conflict of interests implicated by NMCD's contracting with private companies to provide inmate medical services and its failure to ensure that the medical care offered meets a constitutionally permissible standard; he seeks an injunction against NMCD requiring it to (1) implement standards of care for all inmates (2) mandate that all personnel handling prison grievances be state employees, and (3) "Apply the same standards to the compliance (contract) monitors."

_____

[2] LCCF is operated by The G.E.O. Group, Inc., and Plaintiff refers to LCCF in his Complaint as the "G.E.O. prison facility."  This is potentially confusing as Plaintiff's current facility, the Northeast New Mexico Detention Facility (NENMDF), also appears to be operated by The G.E.O. Group.  For clarity's sake, the Court will refer to the facility where the alleged violations occurred as LCCF.

*Doc. 1* at 22.

Defendant Williams argues that the claims against him should be dismissed as moot because (1) Defendant Williams is no longer the New Mexico Secretary of Corrections, (2) Plaintiff is no longer an inmate at Lea County Correctional Facility, and (3)Wexford Health Sources (Wexford), the company in charge of prisoner dental care at the time of Plaintiff's injuries, no longer provides medical care for NMCD.  *Doc. 66* at 1-4.   Defendant Williams further argues that Plaintiff's requests for injunctive relief should be dismissed because they are not narrowly tailored in compliance with 18 U.S.C. § 3626.  *Id.* at 4-5.

In his response, Plaintiff does not dispute the facts asserted by Defendant: that Defendant Williams is no longer the Secretary of the New Mexico Department of Corrections, Plaintiff has since been transferred to another facility, and Wexford no longer provides medical care to NMCD.  *Doc. 76*.  Instead, he disputes the legal conclusion that those facts render his requests for injunctive relief moot.  *Id.*  Plaintiff also argues that his requested relief is narrowly drawn as he is simply requesting that NMCD reimplement the standards of care it previously employed.  *Id.* at 3.  Because I agree with Plaintiff that the facts detailed by Defendant Williams do not render the claims against him moot, and because I find that 18 U.S.C. § 3626 does not impose a pleading requirement, I recommend denying Defendant Williams' Motion to Dismiss.

<u>ANALYSIS</u>

A Rule 12(c) Motion for Judgment on the Pleadings triggers the same standard for analysis employed in 12(b)(6) motions.  *See Nelson v. State Farm Mut. Auto Ins. Co.*, 419 F. 3d 1117, 1119 (10th Cir. 2005); *see also Ramirez v. Wal-Mart Stores, Inc.*,  192 F.R.D. 303, 304 (D.N.M. 2000).  Thus, the Court must "accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party." *Nelson*,  419 F.3d at 1119(citing *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240 (10th Cir. 2003).  "A motion for a judgment on the pleadings will be granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law."  *Ramirez*, 192 F.R.D. at 304 (citing *Burns Int'l Security Servs., Inc. v. United Plant Guard Workers of America*, 47 F.3d 14, 16 (2d Cir. 1995)).

*Replacement of Mr. Williams by a New Secretary for the DOC Does Not Moot Plaintiff's Claims*

First, Defendant Williams argues that the claims against him are moot because he is no longer the Secretary of the NMDOC.  *Doc. 66* at 3-4.  Defendant Williams provides no case law for his assertion, and, indeed, his proposition is at odds with the law.  Because Plaintiff seeks only injunctive and declaratory relief from Defendant Williams, he is suing Mr. Williams in his official capacity.  *See Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993)("where the complaint fails to specify the capacity in which the government official

is sued, we look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability"); *Fenner v. Suthers*, 194 F. Supp. 2d 1146, 1149 (D.Colo. 2002) ("plaintiff's complaint here seeks injunctive relief and is thus readily construed as a suit against defendants in their official capacities"). When a defendant sued in his official capacity is separated from his office, the claims against him do not abate. *Kentucky v. Graham*, 473 U.S. 159, 166 n. 11 (1985); Fed. R. Civ. P. 25(d)(1). Instead, "replacement of the named official will result in automatic substitution of the official's successor in office." *Kentucky*, 473 U.S. at 166 n. 11 (citing Fed. R. Civ. P. 25(d)(1)). Thus, I do not find Mr. Williams' separation from the NMDOC appropriate grounds for dismissal of the claims made against him. Instead, I recommend ordering substitution of the current Secretary of New Mexico's Corrections Department (Ms. Lupe Martinez) for Mr. Williams on the Court docket sheet and on all future filings in accord with Fed. R. Civ. P. 25(d)(1).

*Plaintiff's Transfer to NENMDF from LCCF Does Not Moot His Claims Against Mr. Williams*

Defendant Williams next asserts that the claims against him are moot because Plaintiff is no longer housed at LCCF. *Doc. 66.* Plaintiff was housed at LCCF, a prison within the control of NMCD, when the alleged constitutional violations occurred. *Docs. 1, 66.* Since then, Plaintiff has been transferred to Northeast New Mexico Detention Facility

(NENMDF).  *See doc. 8.*   The NENMDF is also within the control of NMCD.  *See doc. 66* at 1-2.  Private companies under contract with NMCD provide the dental and medical care for inmates at both institutions.  *Docs. 1, 66, 76.*  For the reasons given below, I find that Plaintiff's transfer does not moot his claims against Defendant Williams.

In determining whether a claim is moot, courts must consider whether there is a live and ongoing controversy.  *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004)(quoting *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994)).  The *Wirsching* Court further condensed and explained the rule as follows:

> "The touchstone of the mootness inquiry is whether the controversy continues to 'touch the legal relations of parties having adverse legal interests' in the outcome of the case," and this legal interest must be "more than simply the satisfaction of a declaration that a person was wronged." *Cox*, 43 F.3d at 1348 (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 317, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (per curiam). Generally, it is "the settling of some dispute which affects the behavior of the defendant toward the plaintiff" that distinguishes a case or controversy from an advisory opinion. *Id*. at 1348 (quoting *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)).

*Id*.; *see also Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997)(quoting *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345 at 1348 (10th Cir. 1994))(noting that precedent is clear that a "plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured [by the defendant] in the future").

Mr. Williams cites to *Green v. Branson*, 108 F.3d 1296 (10th Cir. 1997) in support of his assertion that all claims against him are moot.  *Doc. 66* at 4.  In *Green*, the Tenth Circuit

6

held that a former prisoner's claims for declaratory and injunctive relief stemming from an alleged prison beating and neglected medical care were moot once he was transferred (and then released) and thus removed from the custody and control of the defendant guards, warden, and prison physicians. *Green*, 108 F.3d at 1300. As Defendant Williams suggests, a number of other cases have noted that transfer to another prison often moots a § 1983 plaintiff's claims for which he seeks declaratory or injunctive relief. *See e.g. Milligan v. Reed*, 2011 WL 286272, at *3 n.4 (10th Cir. 2011); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010). Mootness upon transfer, however, is not a foregone conclusion, and courts should still apply a mootness analysis. *See Abdulhaseeb*, 600 F.3d at 1311-12 (holding that transfer mooted claims against certain prison-specific defendants, but also considering the larger mootness analysis and finding claims against other defendants still ripe).

Plaintiff's transfer to another prison within the control of NMCD does not moot Plaintiff's claims against the secretary of NMCD. Mootness upon transfer makes sense when injunctive or declaratory relief is sought from defendants (such as wardens, guards, or other prison-specific personnel) whose control over the plaintiff does not extend beyond the four walls of the prison where the plaintiff formerly resided. In such circumstances, those defendants no longer have any interactions with the plaintiff, and there is no longer "a good chance of [the plaintiff] being likewise injured [by the defendant] in the future," *Green*, 108 F.3d at 1299-1300. Similarly, any injunction against certain behavior by those

defendants toward the plaintiff cannot "affect the behavior of the defendant toward the plaintiff." *Wirsching,* 360 F.3d at 1196; *see also id.* ("there is no indication in the record that the remedies that Mr. Wirsching has sought-an order allowing visitation with his children and the opportunity to earn good time credits at a higher rate-would have any effect on the defendant CDOC officials' behavior" [now that Mr. Wirsching has been released from prison]).

The facts in *Green* and *Wirsching*, however, are distinguishable from the instant case. Here, Plaintiff has sued the Secretary of NMCD and has sought changes in the policies established by NMCD for medical and dental care of prisoners. *See doc. 1.* Despite Plaintiff's transfer from one facility to another, he is still subject to the dental care policies implemented by the NMCD and carried out by private providers at his current NMCD facility. In a similar case, the Tenth Circuit held that mooting Plaintiff's claims against the director of the Oklahoma Department of Corrections (ODOC) after a prison transfer was inappropriate, and it reasoned as follows:

> The reasons given for denying Mr. Abdulhaseeb's requests for halal foods involved ODOC policies, and the director of ODOC has final policymaking authority for ODOC. Mr. Abdulhaseeb remains incarcerated in ODOC's custody, subject to ODOC policies, and a judgment in his favor may require ODOC to modify those policies. Thus, relief remains available, and the RLUIPA claims are not moot.

*Abdulhaseeb*, 600 F.3d at 1312; *see also Wardell v. Duncan,* 470 F.3d 954, 957 n.1 (10th Cir. 2006) (where prisoner is no longer incarcerated in a particular facility, ripeness and

mootness analyses focus on whether plaintiff is still subject to regulations he challenges).

Like the Plaintiff in *Abdulhaseeb*, Mr. Swopes "remains incarcerated in [NMCD's] custody,

subject to [NMCD's] policies, and a judgment in his favor may require [NMCD] to modify

those policies." *Abdulhaseeb*, 600 F.3d at 1312. In short, Mr. Swopes is still "incarcerated

in a facility governed by the regulations he challenges." *Wardell*, 470 F.3d at 957 n.1. Thus,

I recommend finding that Plaintiff's claims against NMCD via his suit against its secretary

were not rendered moot by his prison transfer.

*NMCD's New Contract with a Different Independent Contractor for Inmate Medical Care Does Not Moot Plaintiff's Claims.*

Next, Defendant Williams argues that Plaintiff's claims against him are moot

because NMCD has terminated its contract with Wexford, the company that provided

dental care to inmates during the time of the alleged constitutional violations, and

contracted with a different independent contractor to provide inmate medical and dental

care.[3] *Doc. 66.* Plaintiff responds that the changed contract and provider did nothing to

alleviate the ongoing injuries for which he seeks relief. *Doc. 76* at 2. Specifically, he says

that under the new provider, Corrections Medical Services (CMS), "the only thing that has

---

[3] Defendant Williams noted that Wexford ceased to provide medical care to NMCD inmates as of June 30, 2007. *Doc. 66* at 3. Presumably, CMS began providing medical care for NMCD immediately thereafter.

changed is the name;" Plaintiff still has to wait months to see a dentist because, like

Wexford, CMS "cut the dentist to two days a week, & cut out the hygienist all together."[4]

*Id.*

Defendant has provided no information regarding the terms of its new contract nor

any argument as to how the changed provider and contract prevents the likelihood of

Plaintiff being similarly injured by NMCD in the future.  *See Green*, 108 F.3d at 1299-1300.

Indeed, I fail to see how Defendant's contracting with CMS instead of Wexford prevents

the Court's ability to settle a "dispute which affects the behavior of the defendant toward

the plaintiff."  *Wirsching*, 360 F.3d at 1196.  Defendant Williams admits that "Plaintiff is an

inmate in the custody and control of the New Mexico Corrections Department," *doc. 66* at

1, and none of the injunctive relief Plaintiff seeks is specific to Wexford.  *Doc. 1* at 22.

Plaintiff asks for NMCD to draft and implement standards of care that must be followed

by whomever NMCD employs or contracts with to provide dental and medical services to

inmates.  *Id.*  Plaintiff also seeks certain policy safeguards to ensure meaningful internal

monitoring of prisoner rights.  *Id.*  Additionally, in his Complaint, filed after NMCD

switched medical providers, Plaintiff asserts: "to this day I have problems with my gums,

---

[4]  Plaintiff also attempts to make claims based on the neglected dental care of his
fellow inmates.  *See e.g. doc. 76* at 2.  Of course, the potential relief an injunction might
afford other prisoners will not render a claim ripe if the relief will not specifically
benefit the Plaintiff.  *See R.M. Inv. Co. v. U.S. Forest Service*, 511 F.3d 1103, 1107-08 (10th
Cir. 2007).

remaining 2 teeth & my dentures.  They have not fit right since the day I received them."

*Doc. 1* at 10.  Similarly, as mentioned above, Plaintiff argues in his response to Defendant

Williams' motion that he suffers from the same inadequacies of care under CMS as he did

when NMCD contracted with Wexford.  *Doc. 76* at 2.

Accepting Plaintiff's well-pled facts as true, there is an ongoing controversy and it

is one  where the equitable relief sought could still affect the behavior of the Defendant

toward the Plaintiff.  Therefore, I recommend finding that NMCD's changed contract and

medical care provider does not moot Plaintiff's claims against Defendant Williams.

*18 U.S.C. § 3626 Defines the Scope of the Court's Authority to Fashion Prospective Relief; It Does Not Impose a Pleading Standard*

Finally, Defendant Williams argues that the claims against him should be dismissed

because Plaintiff has not narrowly tailored the injunctive relief sought as required by 18

U.S.C. § 3626(a)(1)(A).  *Doc. 66* at 4-5.  In relevant part, the statute reads as follows:

> Prospective relief in any civil action with respect to prison conditions shall
> extend no further than necessary to correct the violation of the Federal right
> of a particular plaintiff or plaintiffs. The court shall not grant or approve any
> prospective relief unless the court finds that such relief is narrowly drawn,
> extends no further than necessary to correct the violation of the Federal right,
> and is the least intrusive means necessary to correct the violation of the
> Federal right.

18 U.S.C.A. § 3626.

Defendant Williams has provided no case law to suggest that this provision of the

Prison Litigation Reform Act (PLRA) imposes a pleading standard, and the Court has found none. In fact, an analysis of the statute itself and the precedent interpreting it suggests that this provision of the PLRA was designed solely to limit and define the scope of the court's authority when it fashions prospective relief in prisoner litigation, and therefore it is not an appropriate basis for dismissing a claim. *See e.g. Miller v. French*, 530 U.S. 327, 348 (2000)*; Shook v. El Paso County*, 386 F.3d 963, 970 (10th Cir. 2004)*; Lynn v. Anderson-Varella*, 257 F. App'x 80, 84 (10th Cir. 2007)(holding that 18 U.S.C. § 3626(a) does not obligate a court to grant a Plaintiff relief; instead, "[t]hose provisions concern only the scope of the court's power to enter prospective and preliminary injunctive relief in civil actions concerning prison conditions").

To begin, a plain reading of the statute informs readers that this section of the PLRA concerns itself specifically with the authority and responsibilities of the court, not the litigants: "*[t]he court* shall not grant or approve any prospective relief unless *the court* finds. . . ." 18 U.S.C. § 3656(a)(1)(A) (emphasis added). Additionally, the statute includes its own enforcement provision, which entitles defendants to immediate termination of any prospective relief granted by the judge without the explicit findings that the relief was narrowly drawn, extends no further than necessary, and is composed of the least intrusive means necessary to correct the violation of the federal right. 18 U.S.C. § 3626(b)(2). The fact that the statute contains its own enforcement provision suggests that the remedy for non-

conforming equitable relief has already been contemplated, and it does not involve the

dismissal of claims: once the Court has ordered the infirm prospective relief, defendants

can move for its immediate termination per 18 U.S.C. § 3626(b)(2).

Supreme Court precedent similarly suggests that 18 U.S.C. § 3626 pertains solely to

the authority of courts.  In an opinion that discusses the import and constitutionality of 18

U.S.C. § 3626 at length, the Supreme Court held that the PLRA, and § 3626(b) in particular,

newly restrict the court's ability to grant or approve prospective relief in prison condition

cases:

> By establishing new standards for the enforcement of prospective relief in §
> 3626(b), Congress has altered the relevant underlying law. The PLRA has
> restricted courts' authority to issue and enforce prospective relief concerning
> prison conditions, requiring that such relief be supported by findings and
> precisely tailored to what is needed to remedy the violation of a federal right.

*Miller v. French*, 530 U.S. 327, 348 (2000)(holding that § 3626(e)(2) prevents federal courts

from employing their traditional equitable authority to enjoin the operation of the PLRA's

automatic stay provision, and further finding that the automatic stay provision is

constitutional).  Despite discussing the new requirement that courts make certain specific

findings when granting injunctive relief, nowhere in the opinion did the Court discuss any

additional new requirement that plaintiffs either conform their requested equitable relief

to the standards of 18 U.S.C. § 3626 or face dismissal.  The Court's omission is not

surprising; besides being unsupported by a plain reading of the statute, such a proposition

would be at odds with both the liberal pleading standards and the requirement that courts construe *pro se* filings liberally.  It would also ignore the fact that, to the extent not limited by statute, courts have discretion to fashion injunctive relief once constitutional violations are found.  *See U.S. v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 495 (2001); *see also Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971).  Defendant points to no statute or opinion which would suggest that a court couldn't cure an allegedly over-intrusive request for injunctive relief by simply modifying a plaintiff's relief into an injunction that meets the strictures of the PLRA.

Finally, precedent from the Tenth Circuit takes the reasoning of *Miller* one step further, holding that because 18 U.S.C. § 3626 pertains solely to the authority of courts, its application is not triggered until that late stage in the game where the court actually grants or approves prospective relief.  In *Shook v. El Paso County*, 386 F.3d 963, 970 (10th Cir. 2004), the Tenth Circuit explicitly adopted the Fifth Circuit's position that 18 U.S.C. § 3626(a)(1) is not triggered "until the court undertakes to fashion prospective relief."  *Shook,* 386 F.3d at 970.  The *Shook* Court reversed and remanded a District Court's denial of class certification because it "prematurely focused on whether the court could ultimately fashion a remedy that satisfied the strictures of § 3626(a)(1)(A)" instead of looking to the traditional Rule 23 factors for certification.  *Id.* at 972.  The court held that "because the fashioning of prospective relief does not occur at the class certification stage, it logically follows that §

3626(a)(1) does not bear on a court's class certification analysis." *Id.* at 971.   Similarly, §

3626(a)(1) should not bear on a Court's analysis of a Motion for Judgment on the Pleadings.

Thus, for all of the foregoing reasons, I recommend denying Defendant's motion to dismiss

premised upon the PLRA.

Conclusion

In summary, I recommend denying Defendant Williams' motion to dismiss (*doc. 66*)

on the basis of mootness and the PLRA.   I further recommend ordering substitution of the

current Secretary of New Mexico's Corrections Department (Ms. Lupe Martinez) for Mr.

Williams on the Court docket sheet and on all future filings in accord with  Fed. R. Civ. P.

25(d)(1).

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   If no objections are filed, no appellate review will be allowed.**

---

UNITED STATES MAGISTRATE JUDGE