IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD SWOPES,

     Plaintiff,

v.                                                            No. CV 10-0125 BB/GBW

JOE WILLIAMS, et al.,

     Defendants.

**REPORT AND RECOMMENDATION
ON DEFENDANTS WEXFORD AND ROBINSON'S
MOTIONS FOR SUMMARY JUDGMENT**

**THIS MATTER** is before the Court on Defendant Wexford Health Sources Inc. (Wexford) and Defendant Susan Robinson's motions for summary judgment. *Docs. 36, 61.* Plaintiff responded to Defendant Wexford's motion and Wexford replied and filed a Notice of Briefing Complete. *Docs. 58, 62, 63.* Plaintiff then filed a surreply without seeking leave of the Court. *Doc. 75.* Defendant Robinson filed her motion for summary judgment a couple of months later. *Doc. 61.* In her motion, she claims that she is in privity with Defendant Wexford and joins in its motion. *Doc. 61 at 1-2.* When Plaintiff failed to timely respond to Defendant Robinson's motion, Defendant Robinson replied to her own motion and filed a Notice of Briefing Complete. *Docs. 67, 68.* More than a month later, Plaintiff moved for an extension of time to respond to Defendant Robinson's motion. *Doc. 73.* I denied that motion due to its excessive tardiness and the fact that Plaintiff had twice been

1

given extensions on response deadlines for other substantive motions in this case and had been warned that further extensions were unlikely. *Doc. 78.*

This case was referred to me for a recommended disposition on February 16, 2010. *Doc. 5.* Defendants argue several grounds for summary judgment, including res judicata. *Doc. 36, 61.* Because I find that Defendants have shown that there is no issue of material of fact regarding the elements of res judicata, I recommend granting their motions for summary judgment.

Plaintiff's §1983 lawsuit arises out of a series of events that took place while he was incarcerated at the Lea County Correctional Facility (LCCF), a New Mexico Corrections Department (NMCD) prison in Hobbs, New Mexico. LCCF is operated by The G.E.O. Group, Inc. under contract with NMCD,[1] and Defendant Janecka is employed by G.E.O. as the warden of LCCF. *See doc. 1* at 2; *doc. 40* at 2-3. NMCD further contracted with Defendant Wexford to provide dental and medical care for inmates. *Doc. 1* at 2; *doc. 34* at 2. Defendant Robinson was an employee of Wexford's and worked at LCCF for part of the relevant time period. *Doc. 60* at 2. She served as a nurse at LCCF for all or some of the time between July 1, 2004 and October 14, 2005. *Id.* From October 14, 2005 to February 22, 2007 she was employed by Wexford at LCCF as the Health Services Administrator. *Id.* She has

---

[1]Plaintiff refers to LCCF in his Complaint as the "the G.E.O. prison facility." This is potentially confusing as Plaintiff's current facility, the Northeast New Mexico Detention Facility (NENMDF), also appears to be operated by The G.E.O. Group. For clarity's sake, the Court will refer to the facility where the alleged violations occurred as LCCF.

not worked at LCCF or for Wexford since then.  *Doc. 61* at 5.

Plaintiff asserts that during his time at LCCF he was given inadequate dental care. *Doc. 1*.  Specifically, he asserts that from late June of 2005 "thru 2007" he made a number of requests to get dental medication and to see a dentist that were, essentially, ignored.  *Id.* at 5-8.  Further, his tooth decay was so severe, and the prison's unconcern for his condition so complete, that at different (unspecified) points during this period he pulled four of his own teeth.  *Id.*  Plaintiff argues that the negligent medical care he received amounts to a violation of his Eighth Amendment right to be free from cruel and unusual punishment. *Doc. 1* at 4, 8.  He further argues that Wexford is responsible for the violation due to its "policies, business practices & lack of dental services," and Ms. Robinson is responsible because she denied him dental care and was deliberately indifferent to his medical needs. *Doc. 1* at 4, 5, 8.

Plaintiff first brought suit on these facts against Wexford, G.E.O. and various defendants for cruel and inhuman treatment under the New Mexico Tort Claims Act in Fifth Judicial District Court of the State of New Mexico on February 14, 2006 (*Swopes I*). *Doc. 36* at Exh. A.  In the caption of that complaint he only listed the State of New Mexico, G.E.O., and Wexford Medical as defendants.  *Id.*  In the "Parties" section of the complaint, however, he listed Joe Williams (Sec. of Corrections), James Janecka (warden), and Ms. Robinson (medical supervisor) as defendants.  *Id.*  In the "Facts" section of the complaint he explained that he began seeking dental attention on June 15, 2005, and "[a]s of 1/10/06,

3

I still have not seen Dental.  I have been given no meds for pain or infection, and hav had no choice but to pull four of my teeth in my cell with no help from medical and no pain killers." *Id. [sic].*  Plaintiff sought $500,000 in damages. *Id.*  G.E.O. and Wexford moved to dismiss Plaintiff's claims for failure to exhaust administrative remedies, and the court held a hearing on the motion on November 8, 2006. *Id.*  On December 12, 2006, the state court granted the motion and dismissed the complaint without prejudice. *Id.*

On April 26, 2007, Plaintiff filed his second action in the same state court (*Swopes II*) on the same facts integral to his current federal suit. *Doc. 36,* Exh. C.  He again brought suit under the New Mexico Tort Claims Act for, among other things, cruel and inhuman treatment. *Id.*  In the caption of the complaint, he listed the defendants as G.E.O, Wexford, and the "State of New Mexico, et al." *Id.*  In the "Parties" section of the complaint, though, he listed James Janecka, Lindsey Brininstool, Don Caviness, Susan Robinson, Bill Richardson, Patricia Madrid, Gary King, and Joe Williams "[i]n their official capacity as well as their personal capacity." *Id.*  Plaintiff's facts section in *Swopes II* is much lengthier than the facts section of *Swopes I,* and Plaintiff combined the claims of *Swopes I* with new claims related to inadequate dental care and LCCF's grievance procedure. *Id.*

In relevant part, Plaintiff made the following allegations of fact in the *Swopes II* complaint: Plaintiff requested a dental appointment on June 29, 2005. *Id.,* ¶ 36.  For the next several months, Plaintiff made numerous other requests for dental attention, was never given an appointment, and pulled four of his own teeth, the last of which he pulled in

December of 2005.  *Id.*, ¶ 38, 40, 42, 69, 81, 82, 92.  Plaintiff also alleged that on February 27, 2006, after "nearly nine months" of waiting,[2] he finally got to see a dentist.  *Id.*, ¶ 123, 124. Unfortunately, that dentist did not have time to treat him, so Plaintiff had to wait until March 31, 2006 to see a dentist who pulled the rest of his bad teeth and ordered the remainder cleaned.[3]  *Id.*, ¶ 123, 124, 144-46.  On April 21, 2006, Plaintiff was seen again by the dentist to have impressions done.  *Id.*, ¶ 153.  On May 25, 2006, Plaintiff was given dentures, but they did not fit right.  *Id.*, ¶ 217, 218.  On September 24, 2006, he was seen by the dentist to have his dentures adjusted.  *Id.*, ¶ 239.  Plaintiff sought $750,000 in damages. *Doc. 36*, Exh. C.

Wexford, G.E.O., and Bill Richardson moved for summary judgment in *Swopes II* on Plaintiff's claims for failure to exhaust administrative remedies (and Bill Richardson's immunity), and the court held a hearing on their motions on November 26, 2007.  *Doc. 36*, Exh. D.  On December 3, 2007, the state court granted the motions and dismissed Plaintiff's claims *with* prejudice.  *Id.*  Plaintiff then moved for reconsideration, attempting to attach copies of grievances to show he had exhausted his administrative remedies.  *Doc. 40*, Exh. B (state appeals opinion of 6/11/09).  When that motion was denied, he appealed, and the appeals court upheld the denial of his motion for reconsideration and the dismissal of his

---

[2] By the Court's count, Plaintiff waited eight months to see a dentist.  *See doc. 36* at Exh. C (June 29, 2005 initial request to February 27, 2006 appointment).

[3] It is not clear whether Plaintiff's teeth were ever cleaned despite the dentist ordering it done.  *See Doc. 36*, Exh. C, ¶ 154, 155.

complaint with prejudice due to failure to exhaust. *Id.*

In its motion, Defendant Wexford argues that it should be granted summary judgment because: (1) Plaintiff's failure to exhaust his administrative remedies precludes his suit, (2) due to *Swopes II*, Plaintiff's claims are barred by claim preclusion, (3) due to *Swopes II*, Plaintiff's claims fail by operation of issue preclusion, and (4) the claims are barred by the statute of limitations. *Doc. 36*. Defendant Robinson argues that she should be granted summary judgment for the same reasons. *Doc. 61*. Because I find that Plaintiff's claims are barred by claim preclusion, my analysis does not reach Defendants' other arguments.

## ANALYSIS

Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that he is "entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Only disputes over facts that might affect the outcome of the suit under the applicable law will preclude summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nonetheless, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact," *Munoz v. St. Mary-Corwin Hospital,* 221 F.3d 1160,1164 (10th Cir. 2000), and conclusory allegations are insufficient to establish an

issue of fact that would defeat the motion.  *Hall,* 935 F.2d at 1110-11. Additionally, in a summary judgment posture, the Complaint may be treated as an affidavit "if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury."  *Id.* at 1111.

Although all facts are construed in favor of the nonmoving party, it is still Plaintiff's responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d at 1184, 1187 (10th Cir. 2005) (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986)).  Applying this standard, I recommend granting summary judgment for Defendants Wexford and Robinson on the basis of res judicata.

Defendant Wexford argues that the claims against it must be dismissed because they were already brought against it in *Swopes II* and were dismissed with prejudice.  *Doc. 36* at 7-8.  Defendant Robinson similarly argues  that the claims against her must be dismissed because they were already brought against her and/or her employer, Wexford, in *Swopes II* and were dismissed with prejudice.  *Doc. 61* at 5-6.  Plaintiff responds that: (1) "The discrepancy of how these issues were addressed in state court is a material fact,"[4] and (2)

---

[4]  I construe this statement liberally as an argument that *Swopes II* was not decided on the merits and have addressed it *infra.*

he should be able to bring claims of federal constitutional violations in federal courts despite any previous state court decisions on those claims.[5]  *See Doc. 58* at 4; *Doc. 75* at 2.

"One of the main policy considerations underlying res judicata is the interest in bringing litigation to an end. 'By preventing repetitious litigation, application of res judicata avoids unnecessary expense and vexation for parties, conserves judicial resources, and encourages reliance on judicial action.'" *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1258 (10th Cir. 1997) (quoting *May v. Parker-Abbott Transfer and Storage, Inc.*, 899 F.2d 1007, 1009 (10th Cir. 1990)).  "Put simply, the doctrine 'involves the impropriety of permitting parties to have two bites at the apple.'" *Casias v. Southwest Medical Associates*, No. CIV-04-0142 JB/ACT, 2005 WL 3662924, at *3 (D.N.M. Oct. 31, 2005) (quoting *Kenman Eng'g v. City of Union*, 314 F.3d 468, 478 (10th Cir. 2002)).  The Full Faith and Credit statute governs res judicata issues where the first court to hear the case was a state court and the second court to hear the case is a federal court.  *See* 28 U.S.C. §1738.  In relevant part, the statute provides: "[t]he...judicial proceedings of any court of [a state]. . . . shall have the same full faith and credit in every court within the United States. . . as they have by law or usage in the courts of such State." *Id.*  Thus, state law determines the standard for res judicata review.  *Id.*; *see also Fox v. Maulding*, 112 F.3d 453, 456 (10th Cir. 1997).  To determine whether Plaintiff's claims are barred by res judicata, then, the Court must

-----

[5] This argument was presented in Plaintiff's sur-reply.  *See doc. 75.*  Although Plaintiff failed to move for permission to file the sur-reply, I will address it because the argument is relevant to the res judicata issue.

determine what preclusive effect New Mexico would give its own decision.  *See id.* at 1411*;*
*See also Stifel, Nicolaus & Co. v. Woolsey & Co.*, 81 F.3d 1540, 1544 (10th Cir. 1996).

Under New Mexico law, "[f]our elements must be met for claim preclusion to bar
a claim. The two actions (1) must involve the same parties or their privies, (2) who are
acting in the same capacity or character, (3) regarding the same subject matter, and (4) must
involve the same claim."[6] *Moffat v. Branch*, 138 N.M. 224, 228 (2005) (citing *Myers v. Olson*,
100 N.M. 745, 747 (1984)); *see also Cagan v. Village of Angel Fire*, 137 N.M. 570, 577 (2008)
(disapproved of on other grounds by *Concerned Residents of S.F. North v. Santa Fe Estates,
Inc.*, 143 N.M. 811, 823 (2008)); *Apodaca v. AAA Gas Co.*, 134 N.M. 77, 101 (2003).
Additionally, "[i]n order for the doctrine of res judicata to apply, the action asserted to have
preclusive effect must have concluded with a final adjudication on the merits." *Cagan*, 137
N.M. at 574 (holding that a dismissal due to failure to prosecute is an adjudication on the

---

[6] *Moffat* opined that there is no difference between New Mexico and federal res
judicata law. *Moffat*, 138 N.M. at 228. Indeed, the *Moffat* court was so convinced of the
similarity that it used federal and New Mexico state law interchangeably. *Id*. at 228
("Because the prior action was in federal court, federal law determines the preclusive
effect of a federal judgment. . . . [but] Because of this lack of divergence [in federal and
state res judicata law], we rely more extensively on New Mexico law for convenience in
this opinion"). Nevertheless, federal courts within the Tenth Circuit have articulated
the elements of res judicata differently. *See e.g. Nwosun*, 124 F.3d at 1257("Res judicata
requires the satisfaction of four elements: (1) the prior suit must have ended with a
judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must
be based on the same cause of action; and (4) the plaintiff must have had a full and fair
opportunity to litigate the claim in the prior suit"). While this difference in articulation
may not result in a difference in application, in this report I have favored the use of
authority from state and federal courts explicitly interpreting New Mexico's preclusion
law.

merits).  Finally, res judicata will only apply where litigants previously had a full and fair opportunity to bring their claims and defenses.  *See e.g. Apodaca,* 134 N.M. at 102.

<u>Same Parties</u>

It is clear that the "same parties" requirement is satisfied for Defendant Wexford. In *Swopes II,* Defendant Wexford was listed in the caption of the complaint as a defendant and he was  named as a defendant in the "Parties" section.  *Doc. 36,* Exh. C.  Moreover, Wexford expressly joined the defendants' summary judgment motion and the order granting the motion explicitly dismissed the claims against it.  *Doc. 36,* Exh. D.

With respect to Defendant Robinson, more discussion is required.  In his Complaint for the case at bar, Plaintiff concedes that he previously brought suit against Defendant Robinson.  *Doc. 1* at 16-18.  Admittedly, in *Swopes II,* Ms. Robinson was not expressly included in the caption.  Nonetheless, Plaintiff used the abbreviation "*et al.*" in the caption and Plaintiff explicitly listed Ms. Robinson as a defendant in the "Parties" section of his complaint.  *Doc. 36,* Exh. C; <u>Black's Law Dictionary</u> 632 (9th ed. 2009) (defining "*et al.*" as "And other persons").

This issue is somewhat muddled by the fact that, when the state court dismissed Plaintiff's claims in *Swopes II,* it expressly did so only as to the defendants named in the caption.  *Id*.  Nonetheless, even if Ms. Robinson's exclusion from the caption and the dismissal order rendered her a nonparty in *Swopes II,* Plaintiff is precluded from bringing suit against Ms. Robinson in the case at bar because he brought the same claims,

unsuccessfully, against Ms. Robinson's employer in *Swopes II*. *See Gonzales v. Hernandez*, 175 F.3d 1202, 1205 (10th Cir. 1999). In *Gonzales*, the plaintiff asserted claims against her former co-workers for discrimination in federal court despite having previously (and unsuccessfully) suing her former employer in New Mexico state court for discrimination inflicted upon her via those same employees. *Id.* at 1203. The Tenth Circuit Court of Appeals first noted that state law governed the question of preclusion. *Id.* at 1204-05. The Court then laid out the test for determining when different parties constitute the "same party" for purposes of New Mexico res judicata law. *Id.* at 1205. Specifically, the Court held that, under New Mexico law, if the initial claim was decided against the plaintiff, defendants in both actions are the "same" for preclusion law purposes if: "(1) liability under one of the claims is based on vicarious responsibility for the defendants in the other claim; (2) the first judgment would preclude a subsequent claim by plaintiff against the first defendants for the conduct alleged in the second claim; (3) the claims in the second action are claims that could have been asserted against the first defendants in the first action; and (4) the first judgment was not based on a defense personal to the first defendants." *Gonzales*, 175 F.3d at 1202 (*citing Ford v. New Mexico Dep't of Public Safety*, 119 N.M. 405 (1994)).

All of the *Gonzales* elements are satisfied here. First, Wexford's alleged liability in

*Swopes II* was based on its vicarious responsibility[7] for its employees, including Defendant Robinson.  In *Swopes II*, Plaintiff alleged that NMCD's standards for medical and dental care plummeted once Wexford was contracted to provide those services.  *Doc. 36*, Exh. C, ¶ 45, 46, 48, 104.  He also alleged that Wexford did not follow NMDC's policies and that it operated or claimed to operate according to its own policies.  *Id.*, ¶ 213, 268.  The only named Wexford employee whose actions he discussed in the Complaint was "The Wexford supervisor, Mrs. Susan Robinson."  *Id.*, ¶ 117.  Essentially, he alleged that Ms. Robinson tardily addressed his informal complaints about inadequate care and then pressured him to sign the complaints as resolved even when nothing had been done to address his concerns.  *Id.*, ¶ 117, 118, 221-27, 230-38.  Plaintiff sued Wexford under the New Mexico Tort Claims Act for its "total disregard for inmate rights."  *Doc. 36*, Exh. C, last page.  From the substance of the complaint, it is clear that Plaintiff was asserting that Wexford's "disregard for inmate rights" was evidenced by its refusal to provide medical and dental care, even when specifically requested by Plaintiff, and it is equally clear that Defendant Robinson was the pivotal gatekeeper in the Wexford-to-prisoner relationship.  Given these facts, I recommend finding that the first element of the *Gonzales* "same parties" test is met

---

[7]  In *Swopes I* and *Swopes II*, Plaintiff sued under the New Mexico Tort Claims Act which, unlike § 1983, permits vicarious liability as a theory of recovery.  S*ee e.g. Bradley v. Lovelace Sandia Health System*, No. 27,936, 2009 WL 6667452 at *6 -7  (N.M. App. Nov. 13, 2009); *see also Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1271 (D.N.M. 2010) (*quoting Ocana v. Am. Furniture Co.*, 135 N.M. 539, 551 (2004)) ("Under basic respondeat superior principles, an employer is liable for an employee's torts committed within the scope of his or her employment.").

as to Defendant Robinson.

The second element of the *Gonzales* test has been met as to Defendant Robinson because, for the reasons explained below, all of the other res judicata elements are fulfilled. Thus "the first judgment would preclude a subsequent claim by plaintiff against [Wexford] for the conduct alleged in the second claim." *Gonzales*, 175 F.3d at 1205.

The third *Gonzales* element is met because Plaintiff could have asserted the claims in the case at bar against Wexford in *Swopes II*.  In both *Swopes II* and the instant case, Plaintiff's claims against Wexford are based on the assertion that its denial of proper dental care was under the color of state law because he was a state prisoner.  *Doc. 36*, Exh. C.  He alleged in both that the lack of dental care constituted cruel and unusual punishment.  *Id.* While he brought only a New Mexico Tort Claims Act claim and not a § 1983 claim in *Swopes II*, the "state court would have had subject matter jurisdiction over the § 1983 claims."  *Strickland v. City of Albuquerque*, 130 F.3d 1408, 1412 (10th Cir. 1997).  Because "Plaintiff has shown no barrier to the joinder of his 1983 claims in the state court action,"[8]

---

[8]  It must be noted that the fact that vicarious liability is not an available avenue to establish liability against the employer defendant in § 1983 claims does not cause a failure of this *Gonzales* element.  In fact, in *Gonzales* itself, the court found this element met in a case which parallels the instant one.  *See Gonzales*, 175 F.3d 1202.  Instead, the *Gonzales* analysis makes clear that this element is focused on whether the court in the first case would have had jurisdiction over the claim brought in the second case – not whether it would have been successful.  *See e.g. Nichols v. Danley*, 266 F. Supp. 2d 1310, 1313 (D.N.M. 2003) ("same party" element not met because employer sued in first case was state agency whose sovereign immunity would have barred § 1983 claim against employer).

I recommend finding that the third *Gonzales* element has been met.  *Id.*

The fourth *Gonzales* element is met because the judgment in *Swopes II* was not based on a defense personal to Wexford.  The claims in *Swopes II*, instead, were dismissed due to Plaintiff's failure to exhaust, which is a defense any of the defendants in either suit could make.

Thus, I recommend finding that Defendant Robinson satisfies the "same party" requirement of res judicata under New Mexico law.  This recommendation is based both upon my conclusion that she was a party in *Swopes II* and because, if she was not, she satisfies all elements of the *Gonzales* test.[9]

Same Capacity

The requirement that a party be in the same or similar legal capacity in a suit relates to the fundamental precept that "a person cannot be bound by a judgment without reasonable notice and an opportunity to be heard."  *Chavez v. City of Albuquerque*, 124 N.M. 479, 484 (1997) (summarily concluding that the parties were the same and acted in the same capacity despite the fact that different city officials were named in the second action

_____

[9]  In fact, the New Mexico Court of Appeals appears to have moved to a less strict element approach for determining res judicata.  *See Chavez v. City of Albuquerque*, 124 N.M. 479, 484 (1997).  *Chavez* was decided subsequent to the *Ford* case so heavily relied upon in *Gonzales.*  In *Chavez*, the New Mexico Court of Appeals "summarily dispose[d] of the first three elements," "despite the number of different City officials named in the district court action," because these requirements "simply serve[] the fundamental notion that a person cannot be bound by a judgment without reasonable notice and an opportunity to be heard.").

because "Plaintiff cannot reasonably argue that the party responsible for the contract claims had no notice of the grievance and no opportunity to be heard therein"); *see also Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 694 (1982), overruled on other grounds by *Universal Life Church v. Coxon*, 105 N.M. 57 (1986). In this case, there can be no dispute that the claims against Defendant Wexford and Defendant Robinson, having met the "same parties" prong, also meet the "same capacity" prong.

Defendant Wexford was undeniably a defendant in *Swopes II* and appeared in that case through counsel. Ms. Robinson was listed as a defendant in the "Parties" section of the Complaints in both *Swopes I* and *Swopes II. Doc. 36*, Exh. A & C. In *Swopes II*, Plaintiff specified that he was suing Ms. Robinson "in [her] official capacity as well as [her] personal capacity."[10] *Doc. 36*, Exh. C at 3. And, as in the instant case, Plaintiff sought money damages from the defendants in both *Swopes I* and *Swopes II. Doc. 1* at 21; *Doc. 36*, Exh. A & C. As in the *Chavez* case, Plaintiff "cannot reasonably argue that the party responsible" for the alleged harm "had no notice of [*Swopes II*] and no opportunity to be heard therein." *Chavez*, 124 N.M. at 484. Thus, I recommend finding that the second requirement of res judicata has been met as to both Defendant Wexford and Defendant Robinson.

---

[10] The Court here need not attempt to address what it means to sue a private entity or its employee in an "official capacity." See *Leonard H. Chanda & Associates, L.P. v. Design Control Comm. Of Meridian Int'l Bus. Ctr.*, No. 09-cv-00014, 2010 WL 3894013, at *7 (D. Colo. Sept. 30, 2010) ("Courts have found official capacity suits against members of private entities puzzling.").

<u>Same Subject Matter</u>

The subject matter is the same in *Swopes II* and the case at bar: Plaintiff seeks redress

for recklessly indifferent dental care[11] over the same period of time.[12]   Plaintiff never

disputes that his federal claims are based on the same subject matter as his claims in *Swopes*

*II*.   Thus, I recommend finding that the "same subject matter" element of res judicata has

been met as to both Defendant Wexford and Defendant Robinson.  *See e.g. Chavez*, 124 N.M.

at 484 ("We can summarily dispose of the [third] element[].  The subject matter was the

same because both actions sought to redress an allegedly illegal termination.").

<u>Same Claim</u>

New Mexico takes a transactional approach to determining whether the two actions

constitute the "same claim."  *Moffat v. Branch*, 138 N.M. 224, 230 (Ct. App. 2005); *Three*

*Rivers Land Co. v. Maddoux*, 98 N.M. 690, 695 (1982) (overruled, in part, on other grounds

by *Universal Life Church v. Coxon*, 105 N.M. 57, 58 (1986)). The transactional approach

appreciates that multiple claims can spring from the same underlying event(s) and still be

---

[11] Originally, Plaintiff also brought a claim against Defendant Brennonstool for interference with his access to the courts based upon the prison's grievance procedure. That claim, however, was dismissed by order of this Court on October 15, 2010.  *Doc. 29.*

[12]  In his federal complaint, Plaintiff does assert that "[t]o this day I have problems with my gums, remaining 2 teeth & my dentures.  They have not fit right since the day I received them."  *Doc. 1* at 10.  While this assertion could be seen as raising an issue of damages which extends past the damages asserted in *Swopes II*, the alleged **violation** is still limited to the allegedly deficient dental care from 2005-2006. Therefore, the subject matter of the instant claim is still identical to the subject matter of the claim in *Swopes II*.

considered the same for res judicata purposes. *See Apodaca v. AAA Gas Co.*, 134 N.M. 77, 101 (2003) ("a mere change in a legal theory does not create a new cause of action") (internal citation omitted); *Ford v. New Mexico Dept. of Public Safety*, 119 N.M. 405, 413 (1994) ("That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims."). It logically follows that actual litigation in Case 1 of the particular legal theory or claim advanced in Case 2 is, thus, not a requirement of res judicata. *Ford*, 119 N.M. at 414 ("While it is true that for purposes of issue preclusion, an issue must be actually litigated for the determination to be binding in a subsequent action, the same is not true when claim preclusion is the applicable doctrine.") (internal citation omitted).

Indeed, what matters is whether the plaintiff *could* have argued the legal theory or claim advanced in Case 2 when he litigated Case 1. *See id.* ("Claim preclusion does not depend upon whether the claims arising out of the same transaction were actually asserted in the original action, as long as they could have been asserted"); *see also Strickland v. City of Albuquerque*, 130 F.3d 1408, 1413 (10th Cir. 1997) (same). Of course, both state and federal claims can spring from the same transaction, and so long as there were no jurisdictional barriers to a plaintiff advancing both sets of legal theories in Case 1, he will be barred from litigating them in Case 2. *See Strickland,* 130 F.3d at 1412 (interpreting New Mexico res judicata law). Unquestionably, the New Mexico state courts have jurisdiction to hear § 1983 claims, so Plaintiff could have brought his § 1983 claims in *Swopes I* or *Swopes II. See*

*id.* at 1413.

The New Mexico Court of Appeals has articulated the following factors to help guide the analysis of the "same claim" element:

> (1) we assess "the relatedness of the facts in time, space, origin, or motivation;" (2) we determine whether the facts, taken together, "form a convenient unit for trial purposes;" and (3) we consider "whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage."

*Moffat*, 138 N.M. at 230 (*quoting Anaya v. City of Albuquerque*, 122 N.M. 326, 330 (Ct. App. 1996)). As to the second factor, New Mexico courts have offered further guidance: "To determine whether these facts form a convenient trial unit, we examine the overlap of the witnesses and evidence relevant to the claims in the two lawsuits." *Apodaca*, 134 N.M. at 101 (internal citation omitted).

Plaintiff asserted violations of the New Mexico Tort Claims Act in *Swopes II* and federal constitutional violations in the case at bar. *See docs. 1, 36.* Both complaints hinged on the same events and thus alleged the same facts: that Plaintiff made numerous requests for dental attention that went largely ignored for the better part of a year, inducing him to pull four of his own teeth. *Id.* Additionally, both complaints described the difficulty Plaintiff has had getting appropriate dental care since he was finally seen by a dentist, had most of his remaining teeth pulled, and was given dentures sometime in 2006. *Id.* Because the facts asserted in both complaints do not diverge, the "overlap of the witnesses and evidence relevant to the claims in the two lawsuits" is complete. *Apodaca*, 134 N.M. at 101

18

(internal citation omitted).  Indeed, "[t]he facts in the state and federal cases align exactly as to time, space, origin, and motivation, and constitute a single unit that could be easily tried together."  *Casias v. Southwest Medical Associates*, No. Civ. 04-0142-JB/ACT, 2005 WL 3662924, at *6 (D.N.M. Oct. 31, 2005).  There is nothing that indicates that treatment of these facts as a single unit would diverge from the parties' expectations.  Consideration of the appropriate factors, thus, overwhelmingly favors finding that the claims asserted in *Swopes II* are "the same" as those asserted in the case at bar, and I recommend so finding.

<u>Adjudicated on the Merits</u>

Plaintiff argues that res judicata should not apply because neither of his earlier state suits were decided on the merits.  *Doc. 56 at 4*.  Relatedly, Plaintiff claims that he "did not have a full and fair opportunity to litigate his claims as the case was dismissed on a procedural mistake."  *Id.*

Although not an explicit part of New Mexico's element test for res judicata, New Mexico courts have held that for res judicata to apply, the earlier suit must have been decided on the merits.  *See Cagan v. Village of Angel Fire*, 137 N.M. 570, 574 (2008) (disapproved of on other grounds by *Concerned Residents of S.F. North v. Santa Fe Estates, Inc.*, 143 N.M. 811, 823 (2008)).  Generally, a dismissal with prejudice is an adjudication on the merits.  *See e.g. Myers v. Olson*, 100 N.M. 745, 749 (1984) (citing *Bradford v. Bronner*, 665 F.2d 680 (5th Cir. 1982) for the proposition that "settlement of a claim in state court resulting in dismissal of action with prejudice bars a subsequent action on the same claim

in federal court"); *c.f. Salazar v. Yellow Freight System, Inc.*, 109 N.M. 443, 445 (1990) ("The phrase 'without prejudice,' when used in an order of dismissal, evinces an intent not to clothe the order with finality and indicates that the order of dismissal was not intended to have a res judicata effect as to the merits of the controversy.").  In fact, the New Mexico Court of Appeals has explicitly held that a dismissal with prejudice for lack of prosecution constitutes an adjudication on the merits for res judicata purposes so long as the losing party had notice and an opportunity to be heard.  *Cagan,*137 N.M. at 575.  Similarly, the Tenth Circuit held that, under a federal res judicata analysis, a litigant who failed to timely file an EEOC complaint and thus had his first action dismissed for failure to meet the statute of limitations was subsequently barred by res judicata from bringing his claim at a later date.  *See Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997); *see also Moffat*, 138 N.M. at 228 (opining that there is no difference between New Mexico and federal res judicata law).

Plaintiff presumably believes that, because the court in *Swopes II* did not address his factual allegations about the dental care he received, the case was not adjudicated on the merits.  Plaintiff, however, misunderstands the meaning of "adjudication on the merits" in this context.  His *Swopes II* complaint was dismissed because he failed to satisfy the important jurisdictional requirement of exhaustion of administrative remedies. *Doc. 40,* Exh. B.  The dismissal was not done *sua sponte*, but was upon motion of the defendants.  *Id.* Plaintiff had the opportunity to respond in writing to Defendants' motion in *Swopes II*, and

the state court held a hearing on the motion for which Plaintiff was telephonically present. *Id.* In fact, Plaintiff was on notice that exhaustion of administrative remedies was a requirement after *Swopes I* was dismissed without prejudice due to his failure to exhaust. *Id.*, Exh. A. After the *Swopes II* hearing, the court dismissed Plaintiff's complaint **with** prejudice. *Id.*, Exh. B. These facts demonstrate that *Swopes II* was adjudicated on the merits for the purposes of res judicata and I recommend finding so.

Finally, construing his argument liberally, Plaintiff argues that res judicata should not apply because he has not yet had the opportunity to bring his federal claims in federal court. *Doc. 75*. Although he is correct that allegations of federal constitutional violations may be heard in federal court, that does not negate res judicata law. The Supreme Court has "made clear that 'Section 1983 . . . does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on ... state claims and then turn to federal court for adjudication of ... federal claims.'" *See Strickland*, 130 F.3d at 1413 (quoting *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 85 (1984)).

CONCLUSION

I recommend finding that the dismissal with prejudice in *Swopes II* of Plaintiff's claims about his dental care while incarcerated in LCCF satisfies each requirement of res judicata as to his claims against Defendant Wexford and Robinson. Consequently, I recommend that Defendant Wexford's Motion for Summary Judgment (*doc. 36*) and Defendant Robinson's Motion for Summary Judgment (*doc. 61*) be granted and all claims

against both Defendants be dismissed with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE